IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROOSEVELT M. WILLIAMS,

                Plaintiff,

   v.                                                  OPINION and ORDER

TRISH ANDERSON, SHANE ZAHRTE,                 17-cv-304-jdp
and LUCAS WOGERNESE,

                Defendants.

---

Plaintiff Roosevelt M. Williams, appearing pro se, is an inmate at Waupun Correctional Institution. Williams alleges that defendant prison officials discontinued a prescription for ice used to treat his gout. Williams bring claims under the Eighth Amendment to the United States Constitution and under Wisconsin-law negligence and infliction-of-emotional-distress theories.

Defendants have filed a motion for summary judgment on all of Williams's claims. I will grant that motion regarding Williams's Eighth Amendment claims because Williams fails to show that any of the defendants acted with conscious disregard toward his gout treatment. I also conclude that most of Williams's Wisconsin-law claims are barred by his failure to comply with the state's notice-of-claim law, and I will relinquish jurisdiction over his remaining state-law medical malpractice claim. So the entire case will be dismissed.

Williams has also filed a motion to compel discovery that I will deny.

MOTION TO COMPEL

After filing his brief opposing defendants' motion for summary judgment, Williams filed a motion to compel defendants to produce their personnel files, work-discipline history, and all inmate grievances filed against them. Dkt. 33. Defendants objected, stating that Williams

sent the discovery request directly to the court instead of defendants, and that Williams jumped the gun on filing his motion to compel, waiting only two weeks after he filed the discovery request to file his motion to compel. Defendants added that they were "in the process of responding" to the request. Dkt. 35, at 2. Williams filed a reply after he received a response from defendants, adding what I take to be a request for entry of summary judgment in his favor under Federal Rule of Civil Procedure 56(f). Dkt. 39. Williams appears to quote sections of defendants' response to his discovery requests, and he attaches copies of defendants' attempt at generating lists of the inmate grievances filed against each defendant by searching for the defendants' names in the summary field of the grievance database. Williams says that defendants told him that there is no surefire way to generate a comprehensive list of grievances against a particular employee without manually sifting through all of the extremely voluminous records. Much of the lists is redacted, although Williams appears to have agreed to redaction of other inmates' names and numbers. *See* Dkt. 38-1.

Williams's decision to file a motion to compel before defendants' response deadline and his failure to submit a complete record of defendants' eventual response are reasons enough to deny his motion. I can't tell exactly what issues the parties are disputing, and it is Williams's duty to explain why defendants' responses and objections are inadequate. Another reason to deny the motion would be that—at least on the fragmented record of the discovery process that Williams provides—there is no reason to think that the extremely broad requests he made are relevant to his claims or proportionate to the needs of this case, which is about a single instance of the denial of medical ice. The parties have the relevant grievance records directly about the incidents at issue here. Williams does not explain what purpose defendants' personnel records or grievance history would serve. So I'll deny his motion to compel.

As for Williams's request for entry of summary judgment in his favor, his motion does not add anything to what was already discussed in his summary judgment opposition. For reasons explained below, I will grant summary judgment to defendants on Williams's federal claims and dismiss his state-law claims. I will deny Williams's motion for summary judgment.

MOTION FOR SUMMARY JUDGMENT

**A. Undisputed facts**

The following facts are undisputed unless noted otherwise.

Plaintiff Roosevelt Williams was incarcerated at Columbia Correctional Institution (CCI) during the events of this lawsuit. Defendants all worked at CCI: Shane Zahrte was a correctional officer, Lucas Wogernese was a captain, and Trisha Anderson was a registered nurse.

Williams has been diagnosed with gout, a condition causing extremely painful inflammation of his joints. During the events of his lawsuit, Williams received several types of treatment. Doctors gave him prescriptions for allopurinol to decrease his uric acid level, chlorthalidone to treat the high blood pressure that often accompanies gout, and ibuprofen to treat inflammation and pain; a medical assignment to a lower bunk so that he would not have to climb to a top bunk; and orders to receive "medical ice" to help with pain, inflammation, and fluid buildup. Williams was prescribed ice in early April 2016 (for three months) and late May 2016 (for six months).

The "Special Handling Summary" document stated that Williams should use ice four times a day on his left foot and big toe "as needed." Dkt. 27-1, at 20. It also stated that Williams was required to get the ice during medication-pass times. Williams attempts to

dispute this requirement by saying that he was allowed to get ice four times a day *or* as needed. But that is not a reasonable interpretation of the doctor's prescriptions for ice bags using the Latin abbreviations "QID PRN," which mean "four times a day" and "as needed."[1] Dkt. 27-1, at 18, 19. The only reasonable interpretation of those orders is that Williams should use ice up to four times a day if he needed to do so to combat his symptoms. I infer from the parties' materials that inmates obtain medical ice by using bags that they are given for that purpose. The parties do not explain how large the bags are or how many bags an inmate may fill at one time.

Aside from Williams's medical-ice prescription, the prison handbook states that prisoners are allowed to take ice back to their cells during dayroom hours and after meals, limited to one tumbler of 22 ounces at a time. Williams says that defendant Zahrte and non-defendant Kim Carl would not let him obtain *any* ice—during medication pass or dayroom time or after meals—although he does not produce any evidence of these denials other than the incident at issue in this case.

If security staff notices that an inmate is misusing his special medical need for ice, then the medical ice can be discontinued. Inmates misuse their medical ice if they overfill their ice bags, use the ice for beverages, hand the filled ice bag to other inmates, or use the ice bag for other purposes. Staff would be concerned about an inmate's misuse of ice because there is a limited amount of ice available on each unit, and an ice shortage could create conflict among inmates.

---

[1] *See* https://medlineplus.gov/appendixb.html (listing common medical abbreviations).

If security staff witnessed an inmate misusing ice, they could either fill out an incident report or issue a conduct report if they felt it was warranted. Health Services Unit staff would discontinue the special medical need for ice upon receiving a report of such an issue.

Williams's medical-ice order was discontinued on June 17, 2016, following an incident report written by defendant Correctional Officer Zahrte. Defendants do not present a declaration from Zahrte recounting the events. Instead, defendants refer to Zahrte's incident report. Zahrte stated in the report that he thought that Williams was using the ice improperly, because Williams took several bags of ice to his cell during meal time, and the bags were filled to the point of overflowing, rather than filled with enough room to close the bags so that they could be applied without ice falling out of them. Zahrte stated that he thought that Williams was getting ice for his and his cellmate's personal use. Zahrte talked to the sergeant on duty, who spoke with Williams. Zahrte also called defendant Nurse Anderson, who told him to write an incident report for possible termination of Williams's medical ice.

Williams disputes these events in vague terms. He says that he did not abuse or misuse his ice bag, but he does not describe precisely what happened during this incident. In an inmate grievance he filed about the discontinuing of his medical ice, he stated that Zahrte punished him for obtaining two small bags of ice. *See id.* at 15.

After Zahrte filed the incident report, someone in the Health Services Unit officially discontinued Williams's medical ice. The records are not clear about who in the Health Services Unit made that decision. Defendants contend that there is no proof that defendant Nurse Anderson made that order. And Anderson says that she does not remember making that decision. But Williams says that Zahrte told Williams that Anderson discontinued the ice. And Williams points to an information request form he filed asking about the discontinuation of

his ice, in which a CCI staffer responded, "You may appeal Nurse Anderson's decision." *Id.* at 23. Because I must draw all reasonable interferences from the record in Williams's favor as the party opposing summary judgment, *see Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999), I will assume at this point that Anderson was the official who discontinued the ice. Williams's prescription was reinstated on June 20. The record does not show who made that decision.

Defendant Captain Wogernese reviewed Zahrte's incident report on June 19, concluding that it was appropriate for staff to talk to Williams and for Health Services Unit staff to be notified.

Williams filed an inmate grievance about the discontinuation. The grievance was dismissed on the grounds that Zahrte appropriately reported Williams's misuse of the medical-ice prescription, and that it was appropriate for the Health Services Unit to temporarily discontinue the ice because of that misuse, although the examiner also noted that there was no documented history of Williams abusing the ice and that staff could have instead worked with Williams to educate him about the proper use of ice. *See id*. at 2–3. The institution complaint examiner appears to have based the decision on the allegation that Williams had made several trips between the ice machine and his room. On appeal, the corrections complaint examiner recommended affirming the decision for a different reason; stating that Williams violated the medical-ice order by getting ice outside of the proper medication-pass time. *Id.* at 7. The corrections complaint examiner also stated that the reviewing nurse "need not wait for the prescriber to change or alter the order when an inmate is failing to follow a medical order. The RN may take action and then have that action reviewed by the prescriber to determine next steps." *Id.*

6

**B. Analysis**

Williams brings Eighth Amendment and Wisconsin-law negligence and infliction-of-emotional-distress claims against defendants Zahrte, Wogernese, and Anderson for discontinuing his medical-ice prescription.

1. **Eighth Amendment claims**

The Eighth Amendment prohibits prison officials from consciously disregarding prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A defendant "consciously disregards" an inmates' need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Defendants do not directly address whether Williams had a serious medical need. Gout itself almost certainly is a serious medical need, although in this case the issue is whether the symptoms the ice was meant to treat—pain, inflammation, and fluid buildup—is serious

7

enough that a deprivation of ice over three days could violate the Eighth Amendment. Williams says that he suffered pain during the three days without medical ice. Defendants say that Williams could have gotten ice for personal use at other times, at least three times a day at meal time. But Williams says that he was blocked from getting meal-time ice. I will infer that there's a reason a doctor prescribed Williams medical ice four times daily rather than just having him rely on meal-time ice to treat his problem. For purposes of summary judgment, I will assume that Williams had a serious medical need.

Defendants raise a related point in contending that they did not consciously disregard the problem: they say that they stopped Williams from receiving only one minor aspect of his gout treatment, and even without medical ice he received adequate gout treatment. They say that Williams does not have the right to choose his treatment and that I must consider the totality of Williams's care. *See* Dkt. 21, at 9–10, 13. But that type of analysis is usually applied to cases in which a prisoner challenges the direct treatment decisions by his medical provider, who ordinarily has the leeway to choose among different potential treatment options. That isn't what happened here.

Rather, Williams contends that non-medical professionals Zahrte and Wogernese and Nurse Anderson countermanded the instructions of his prescribing doctor in discontinuing his ice. He argues that these non-doctor defendants cannot override a doctor's decision. That proposition is true, at least to a point. *See, e.g., Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (nurse generally required to defer to treating physician's instructions and orders); *Zentmyer v. Kendall Cty., Ill.*, 220 F.3d 805, 812 (7th Cir. 2000) ("If a defendant consciously chose to disregard a nurse or doctor's directions in the face of medical risks, then he may well have exhibited the necessary deliberate indifference."). But corrections staff still have the power

to enforce prison regulations aimed at maintaining security and order at the prison. *See, e.g.*, *Berry v. Lutsey*, 780 F. App'x 365, 369 (7th Cir. 2019) ("when the staff did not grant Berry one of his requests, they did so based on the absence of a medical need . . . or their assessment that any asserted need did not outweigh security concerns.").

I'll start with defendant Zahrte. Whether Zahrte's stated security rationale supports granting him summary judgment depends on the circumstances and how he perceived them. Zahrte wouldn't violate the Eighth Amendment by reporting a legitimate violation of prison rules, or even if he mistakenly believed that Williams had violated the rules. But if Williams had evidence to prove that Zahrte lied about Williams's handling of ice for the purpose of misleading Anderson, thwarting Williams's medical care and causing him pain, that would show that Zahrte maliciously interfered with Williams's medical treatment and consciously disregarded Williams's need.

Defendants provide Zahrte's report stating that Williams abused his medical-ice order by getting too much ice, and that Williams got medical ice during meal time instead of during the allowed medical-ice times at medication pass. Zahrte says that Williams's actions led him to believe that Williams was using the ice for non-medical reasons. Williams attempts to dispute this account, stating vaguely that he didn't abuse his ice bag, and that he didn't use ice for an improper purpose. But he provides almost no detail about the incident to explain how Zahrte's story is incorrect.

Although Williams does not include it in his proposed findings, Williams's inmate grievance states that he filled only two bags of ice, which appears to contradict Zahrte's statement that Williams filled "several" bags. But that minor discrepancy would not support a reasonable inference that Zahrte fabricated the entire story. Williams does not directly dispute

9

that the ice was overflowing from his bags or that he used his medical-ice bag to obtain ice during meal-time—even though a strict reading of Williams's restriction shows that he was not authorized to get medical ice then. Williams does not even explain how many bags he was allowed to fill at one time or how much ice fit into those bags, so he fails to explain how Zahrte's report is even incorrect, let alone fabricated.

Williams says that he used the ice for proper purposes, but Williams's subjective state of mind isn't relevant to the Eighth Amendment claim; Zahrte's state of mind is what matters. At the summary judgment stage, Williams has the burden of producing evidence that could prove his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Williams fails to do so. Williams contends that Zahrte meant to retaliate against him for having two other lawsuits against prison staff. He says that Zahrte was aware of those lawsuits and that Zahrte's co-workers Carl and Wogernese were defendants in them. But he doesn't provide any facts or evidence suggesting that Zahrte acted the way he did because of those lawsuits. Williams's mere speculation is not enough for a reasonable jury to conclude that Zahrte maliciously issued the incident report. *See, e.g., Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)).

Williams's evidence might show, at most, that Zahrte was mistaken in thinking that Williams broke the rules or meant to use the ice for an improper purpose. But this type of mistake isn't enough to violate the Eighth Amendment. Williams's vague recounting of the incident and speculation about Zahrte's motive are not enough to support a reasonable jury verdict that Zahrte consciously disregarded Williams's medical need.

Regarding defendant Wogernese, the undisputed facts show that he reviewed Williams's report on June 19, after Anderson had already discontinued the ice. There's no evidence suggesting that Wogernese could change this decision. So there is no basis for a reasonable jury verdict that Wogernese consciously disregarded Williams's medical need.

As for defendant Anderson, the only reasonable inference from the facts is that she based her discontinuation of Williams's medical ice on Zahrte's incident report. Williams contends that she colluded with Zahrte and Wogernese to harm him, again raising his other lawsuits involving Wogernese. But Williams does not present any evidence showing that Anderson's specific actions were driven by a retaliatory intent.

Williams also argues that Anderson, as a nurse, cannot countermand a doctor's prescription. Neither side explains the exact procedure for how Health Services Unit staff considers discontinuation of a special medical item for violation of prison rules, or the procedure for doctor review of these decisions. But the discussion in the grievance materials suggests that Anderson's rejection was made in the usual course of these types of decisions, and that a doctor reviewed that discontinuation with a few days. Williams does not point to any evidence or legal authority suggesting that nursing staff cannot temporality discontinue items related to a violation of prison rules, nor does he suggest that Anderson acted maliciously to harm him by flouting DOC procedures for these types of discontinuations. So no reasonable jury could find in Williams's favor on the Eighth Amendment claim against Anderson. I will grant summary judgment to defendants on all of Williams's Eighth Amendment claims.

2. **Wisconsin-law claims**

Williams also brings negligence and infliction-of-emotional-distress claims against defendants under Wisconsin law. Although I am dismissing Williams's federal claims, I will

11

retain jurisdiction to decide some of Williams's state-law claims because they clearly have no merit and it would be inefficient to leave the claims open for a later state court action. *See Korzen v. Local Union 705*, 75 F.3d 285, 288–89 (7th Cir. 1996) ("The normal practice of course is to relinquish jurisdiction over a supplemental claim when the main claim is dismissed before trial, but if the supplemental claim is easily shown to have no possible merit, dismissing it on the merits is a time saver for everybody.").

Defendants say that Williams's state-law claims should be dismissed because Williams failed to comply with Wisconsin's notice-of-claim statute, Wis. Stat. § 893.82. Williams concedes that he filed his notice of claim about defendants' actions in February 2017, well beyond the 120-day deadline the statute sets for properly filing a notice of claim before filing a lawsuit. Because Williams filed his notice of claim too late, I will dismiss his state-law claims against defendants Zahrte and Wogernese, and his infliction-of-emotional-distress claims against Anderson.

But the 120-day deadline does not apply to medical malpractice actions, and the negligence claim against Nurse Anderson could be construed as a medical malpractice claim. *See* § 893.82(5m). So I will dismiss the negligence claim against Nurse Anderson without prejudice, leaving Williams free to refile that claim in state court, subject to the applicable Wisconsin statute of limitations.

ORDER

IT IS ORDERED that:

1. Plaintiff Roosevelt M. Williams's motion to compel discovery, Dkt. 33, is DENIED.
2. Plaintiff's motion for entry of summary judgment in his favor, Dkt. 39, is DENIED.

3. Defendants' motion for summary judgment, Dkt. 21, is GRANTED with respect to plaintiff's Eighth Amendment claims and all of plaintiff's state-law claims other than his negligence claim.

4. Plaintiff's state-law negligence claim against defendant Anderson is DISMISSED without prejudice.

5. The clerk of court is directed to enter judgment for defendants and close this case.

Entered December 4, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge